# 22-0547-cv

## United States Court of Appeals
### *for the*
## Second Circuit

RAYMOND ZDUNSKI,

*Plaintiff-Appellant,*

– v. –

ERIE 2-CHAUTAUQUA-CATTARAUGUS BOCES, DAVID O'ROURKE,
in his official capacity, JOHN O'CONNOR, in his official capacity,
BRIAN LIEBENOW, LAURIE BURGER, TRACY SMITH-DENGLER,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

KRISTINA S. HEUSER
KRISTINA S. HEUSER, PC
*Attorney for Plaintiff-Appellant*
23 Birch Hill Road
P.O. Box 672
Locust Valley, New York 11560
(516) 676-1565

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

I. INTRODUCTION ........................................................1

II. RELEVANT FACTS ...................................................1

III. RELEVANT PROCEDURAL HISTORY ....................................5

IV. ARGUMENT...........................................................6

    Standard of Review................................................6

    A. The Court Abused Its Discretion by Denying Plaintiff's
       Motion to Compel and Cutting Off Discovery .....................8

    B. Awarding Summary Judgment Was Improper Because
       Disputed Issues of Material Fact Remained........................9

V. CONCLUSION.........................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Agosto v. INS*,
    436 U.S. 748 (1978).............................................................13

*Amphenol Corp. v. Paul*,
    591 F. App'x 34 (2d Cir. 2015) ..............................................8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .................................7, 11

*Baker v. Home Depot*,
    445 F.3d 541 (2d Cir 2006) ...................................................15

*Bey v. I.B.E.W. Local Union # 3*,
    2008 U.S. Dist. LEXIS 130768 (S.D.N.Y. Jan. 30, 2008) .................................7, 8

*Brennan v. Deluxe Corp.*,
    2021 U.S. Dist. LEXIS 100006 (D. Md. May 26, 2021,
    Civil Action No. ELH-18-2119).............................................10

*Bryant v. Maffucci*,
    923 F.2d 979 (2d Cir. 1991) ..................................................12

*Buonanno v. AT&T Broadband, LLC*,
    313 F. Supp. 2d 1069 (D. Colo. 2004)....................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ......................................7

*Cosme v. Henderson*,
    287 F.3d 152 (2d Cir. 2002) ..................................................15

*Crawford v. Washington*,
    541 U.S. 36 (2004)................................................................13

*D.H. Blair & Co., Inc. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) ...................................................11

*Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*,
    902 F.2d 174 (2d Cir. 1990) ..................................................11

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768, 135 S. Ct. 2028, 192 L. Ed. 2d 35 (2015) .....................................15

*Feingold v. New York*,
  366 F.3d 138 (2d Cir. 2004) ....................................7

*FIH, LLC v. Found. Capital Partners LLC*,
  920 F.3d 134 (2d Cir. 2019) ....................................8

*Goenaga v. March of Dimes Birth Defects Found.*,
  51 F.3d 14 (2d Cir. 1995) ....................................12

*Gonzalez v. Stringer*,
  2010 U.S. Dist. LEXIS 78759 (D. Conn. Aug. 4, 2010,
  No. 08CV1102 (WWE)) ................................................ 11, 14

*Holcomb v. Iona Coll.*,
  521 F.3d 130 (2d Cir. 2008) ....................................6

*Hollander v. Am. Cyanamid Co.*,
  895 F.2d 80 (2d Cir. 1990) ....................................9

*Holtz v. Rockefeller & Co., Inc.*,
  258 F.3d 62 (2d Cir. 2001) ....................................6

*Howley v. Town of Stratford*,
  217 F.3d 141 (2d Cir. 2000) ....................................7

*Jasco Tools, Inc. v. Dana Corp. (In re Dana Corp.)*,
  574 F.3d 129 (2d Cir. 2009) ....................................13

*Knight v. Conn. Dep't of Pub. Health*,
  275 F.3d 156 (2d Cir. 2001) ....................................16

*Knight v. U.S. Fire Ins. Co.*,
  804 F.2d 9 (2d Cir. 1986) ....................................7

*Mercedes v. Dept. of Educ.*,
  2018 U.S. Dist. LEXIS 168181 (S.D.N.Y. Mar. 31, 2018)....................................8

*Pinnacle Nursing Home v. Axelrod*,
  928 F.2d 1306 (2d Cir. 1991) ....................................9

*Smith v. City of NY*,
  697 F App'x 88 (2d Cir. 2017) ....................................13

*Tabura v. Kellogg USA*,
   880 F.3d 544 (10th Cir. 2018) ...............................................................10

*Trans World Airlines, Inc. v. Hardison*,
   432 U.S. 63, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977) .........................15

*United States v. Scully*,
   877 F.3d 464 (2d Cir. 2017) ...................................................................8

*Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*,
   373 F.3d 241 (2d Cir. 2004) .................................................................14

*We the Patriots USA, Inc. v. Hochul*,
   2021 U.S. App. LEXIS 32880 (2d Cir. Nov. 4, 2021,
   Nos. 21-2179, 21-2566) .......................................................................14

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000) ........................................................... 11, 12

## Statutes and Other Authorities:

42 U.S.C. § 2000e-2(a)(1) ...........................................................................14

42 U.S.C. § 2000e(j) ....................................................................................15

*EEOC Compliance Manual, The U.S. Equal Employment Opportunity
   Commission* ...........................................................................................10

Fed. R. Civ. P. 26 .........................................................................................5

Fed. R. Civ. P. 56(c) ................................................................................7, 11

Fleming James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* 150
   (2d ed. 1977) ................................................................................... 11, 12

## I. INTRODUCTION

Plaintiff-Appellant appeals the District Court's award of summary judgment to Defendants-Appellees, the preceding orders denying discovery to Plaintiff, and the resultant Judgment dismissing the action. Plaintiff-Appellant's claims stem from the termination of his public employment without due process, which resulted from the denial of his requested accommodation to be exempted from a training, attendance at which would cause him to violate his sincerely held religious beliefs. As articulated hereinbelow, Defendants-Appellees did not meet their burden establishing entitlement to summary judgment, and the lowe court abused its discretion in denying Plaintiff-Appellant's requests to compel discovery and extend the discovery deadlines.

## II. RELEVANT FACTS

The following facts are alleged in the Complaint (A-10 through A-13) and are undisputed by Defendants-Appellees:

Plaintiff was hired by BOCES on July 5, 2011 into the title of Account Clerk. He worked at the BOCES Central Business Office located in its LoGiudice Center in Fredonia, New York. Plaintiff's duties included processing payroll for three different school districts, retirement reporting, quarterly tax preparation, and W-2 preparation. Plaintiff had an unblemished record of employment. He had never been written up or in any way disciplined by any of the defendants. Approximately one

1

week before defendant's employment with BOCES was terminated, he was promoted to the title of Senior Account Clerk. Plaintiff earned an annual salary of $32,000. In addition to this, plaintiff received the following benefits as part of his compensation package: medical and vision insurance, 10 days paid vacation, 18 sick days per year, 13 paid holidays, enrollment in the New York State Retirement System. In February 2018, plaintiff was directed by his employer to attend a mandatory training later that month. The training was to be put on by the local "Pride Center" and was titled "LGBTQ Cultural Competency". Only employees at the LoGiudice Center (i.e, not all BOCES employees) were required to attend. Plaintiff did not want to attend the training on the basis that he is a devout Christian and, as such, his beliefs regarding homosexuality are dictated to him by holy scripture. Plaintiff did not want to be forced to listen to indoctrination that is in contradiction to the tenets of his faith. Plaintiff advised defendant Smith-Dengler via e-mail that he was declining to attend the training. Plaintiff also requested in that e-mail that a similar training be offered to teach employees greater cultural sensitivity towards persons of faith to hopefully curtail the offensive religious slurs that plaintiff regularly heard in the office. That request was not acknowledged. Plaintiff did not attend the February training and received no formal discipline or reprimand at that time. Then, in May 2018, plaintiff received an e-mail from defendant Burger advising that all employees who were not in attendance at the February LGBTQ

training must attend a make-up session on May 22, 2018. Plaintiff responded to that e-mail inquiring as to the specific objectives of the training. Defendant Burger responded that the topics to be covered at the training included: "Recognizing the difference between sex & gender, understanding aspects of identity, understanding how beliefs/feelings/values perpetuate oppression" etc. Plaintiff has deeply held religious beliefs on the enumerated topics, which are dictated to him by God and His Holy Word. Thus, plaintiff responded to the invitation by expressing his belief in the Bible and explaining that the teaching at the training would contradict God's Word and his religious beliefs. Plaintiff further expressed in that same e-mail that he loves all people and does not treat any co-worker or any other person differently from anybody else based upon their sexual orientation. Plaintiff also again requested that BOCES provide a similar training to counter discrimination against Christians. Defendant Burger responded that plaintiff must attend the May training or face disciplinary action including possible termination. Defendants-Appellees again denied plaintiff's request for a religious accommodation exempting him from the LGBTQ training. Defendants-Appellees also ignored plaintiff's request to provide alternative or supplemental training that teaches employees about cultural sensitivities towards Christians and other persons of faith. On May 18, 2018, plaintiff was directed by defendant Smith-Dengler to attend a meeting to discuss all of the foregoing as well as a Facebook post plaintiff made regarding the situation he

was being faced with at work (which was clearly a pretext put forth by defendants as they prepared to terminate plaintiff's employment, as evidenced by the fact that this was not raised at the unemployment hearing as a basis for plaintiff's termination). The aforedescribed meeting occurred on May 21, 2018. At the meeting, defendant was issued a "counseling memo" by defendant Smith-Dengler for alleged insubordination. Plaintiff was directed by that memo to attend the training the following day or else face discipline up to and including termination. Plaintiff did not attend the training on May 22, 2018 due entirely to his commitment to his faith. On May 30, 2018, defendant Liebenow took plaintiff into a room and asked him why he did not attend the training. Plaintiff explained that he is a Christian and that attending the training would have violated his religious beliefs. Defendant Liebenow immediately handed plaintiff a letter terminating his employment effective immediately. Thereafter, plaintiff applied for unemployment benefits. BOCES opposed plaintiff's application, alleging that plaintiff was fired for misconduct. Defendant Burger was the sole witness to give testimony in opposition to plaintiff's application before the Unemployment Insurance Appeals Board.

To summarize, the undisputed facts relevant to the central issues in this case are the following: Plaintiff-Appellant was an employee of Defendants-Appellees; Defendants-Appellees mandated that Plaintiff-Appellant attend a training put on by the local Pride Center on "cultural competency" regarding lesbian, bisexual, gay,

and transgender persons; Plaintiff-Appellant sought a religious accommodation exempting him from attending the training because the training conflicted with his sincerely held religious beliefs; Plaintiff-Appellant's request was denied by Defendants-Appellees (without them engaging in the requisite interactive process in an effort to identify a mutually agreeable accommodation and without providing an explanation for the denial that comports with the law); and, Defendants-Appellees terminated Plaintiff-Appellant's employment because he did not attend the training.

### III. RELEVANT PROCEDURAL HISTORY

On October 26, 2020, the parties entered into a Stipulated Scheduling Order setting forth all discovery deadlines, which was so-ordered by the Court (A-55 through A-57). Counsel conferred regarding the schedule that was proposed to the Court, and defense counsel filed it. Thereafter, counsel exchanged Rule 26 disclosures pursuant to the scheduling order. Plaintiff provided copies of all documents in his possession at that time and relevant to the litigation to defense counsel with his disclosures. Defense counsel, on the other hand, only identified relevant documents but did not provide copies of same.

Plaintiff's First Set of Interrogatories and Demand for Production of Documents were served upon defense counsel via email on April 22, 2021 (A-162 through A-184). Defense counsel responded declining to respond at all to the request (A-185). The Stipulated Scheduling Order provides a date of November 20, 2021 as

the deadline by which Plaintiff's counsel was to initiate discovery by the service of demands (at Paragraph 6). Plaintiff made a motion to compel responses to his discovery demands and to extend all discovery deadlines (A-189 through A-230). Plaintiff's motion was denied (A-263 through A-266). Plaintiff made another such motion after a substitution of counsel was entered (A-267 through A-275), but the Court denied that motion as well (A-294 through A-302).

With no document discovery having been provided to Plaintiff nor any depositions having been taken, Defendants-Appellees moved for summary judgment (A-303 through A-438). The Court granted Defendants-Appellees' motion and entered Judgment for Defendants-Appellees (SPA-1 through SPA-28).

## IV.   ARGUMENT

<u>Standard of Review</u>

This Court maintains that "[o]n appeal from a decision to grant summary judgment, we review the record de novo to determine whether genuine issues of material fact exist requiring a trial." *Holcomb v Iona Coll.*, 521 F3d 130, 137 (2d Cir 2008). The Court further "emphasize[d] that, at this stage of the proceedings, [the Court is] required to construe the evidence adduced in the court below in the light most favorable to plaintiff's case. *See, e.g.*, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)." *Id.* at 132.

It is well-settled that, "[t]he court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004)." *Bey v I.B.E.W. Local Union # 3*, 2008 U.S. Dist. LEXIS 130768 at 19-21 (SDNY Jan. 30, 2008). "It is axiomatic that the responsibility of the court in deciding a summary-judgment motion 'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.' *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986); *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Howley v. Town of Stratford*, 217 F.3d 141, 150-51 (2d Cir. 2000)." *Id.*

"The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' that demonstrate the absence of a genuine issue of material fact…If the movant fails to meet its initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. (*internal citations omitted*)" *Bey v. I.B.E.W. Local*

*Union # 3*, 2008 U.S. Dist. LEXIS 130768, at 19-21 (SDNY Jan. 30, 2008). "In considering a summary judgment motion, the court must 'view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor…'" *Mercedes v Dept. of Educ.*, 2018 U.S. Dist. LEXIS 168181 at 18-19 [S.D.N.Y. Mar. 31, 2018].

A. The Court Abused Its Discretion by Denying Plaintiff's Motion to Compel and Cutting Off Discovery

Denial of a motion to compel discovery is reviewed for abuse of discretion. *See, e.g.*, *Amphenol Corp. v Paul*, 591 F.App'x 34, 36 (2d Cir. 2015). "A district court abuses its discretion 'when its decision cannot be located within the range of permissible decisions or is based on a clearly erroneous factual finding or an error of law. *United States v. Scully*, 877 F.3d 464, 474 (2d Cir. 2017). *FIH, LLC v Found. Capital Partners LLC*, 920 F3d 134, 145 (2d Cir. 2019)." It was a clear abuse of discretion for the lower court to allow Defendants-Appellees to deny discovery to Plaintiff-Appellant when the discovery deadline had not yet elapsed pursuant to the explicit text of the so-ordered discovery schedule. Beyond this, based on the facts and circumstances surrounding the delay in proceeding with discovery (*i.e.,* lack of communication by defense counsel with Plaintiff's counsel, COVID-19, relocation of Plaintiff's counsel, Plaintiff's substitution of attorney, etc.), it was an abuse of discretion for the lower court to deny an extension of all discovery deadlines to complete paper discovery and allow for Plaintiff-Appellant to depose Defendants-

Appellees. The District Court's abuse of discretion in denying plaintiff's motion to compel discovery and/or extend the discovery deadlines warrants vacatur of summary judgment. *See, e.g.*, *Hollander v Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990).

B. <u>Awarding Summary Judgment Was Improper Because Disputed Issues of Material Fact Remained</u>

Defendants-Appellees failed to establish their entitlement to summary judgment as a matter of law. The following is a non-exhaustive list of critical disputed issues of material of fact that remain: whether Plaintiff-Appellant's requested accommodation actually posed an undue hardship (including whether the employer actually evaluated Plaintiff-Appellant's accommodation request or just dismissed it without exploration); whether other employees requested accommodations and whether those were granted or denied (to determine Plaintiff-Appellant's disparate treatment claim); the substance of the training and how and to what extent that would have satisfied the employer's stated objectives and caused Plaintiff-Appellant to violate his sincerely held religious beliefs; and, what process, if any, was afforded Plaintiff-Appellant regarding the loss of his public employment and what that consisted of exactly.

Where "the record is devoid of sufficient facts to determine" the issues before the court, denial of summary judgment is proper. *Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306, 1316 (2d Cir. 1991). In a strikingly similar case (also dealing with a

sought religious exemption to an employer's mandatory training on issues of sexual orientation and gender identity), *Brennan v. Deluxe Corp.*, 2021 US Dist LEXIS 100006 (D. Md May 26, 2021, Civil Action No. ELH-18-2119), the employer asserted an undue hardship defense based upon its legal obligations to present such a training pursuant to state law. The Court responded that the employer "ignore[d] the context-dependent, fact-intensive nature of the undue hardship analysis." *Id.* at 46. Notably, the Maryland District Court points to EEOC guidance that supports exemption from training for persons with conflicting religious beliefs:

> If training conflicts with an employee's religious beliefs, the content of the training materials may be determinative in deciding whether it would pose an undue hardship to accommodate an employee by excusing him or her from the training or a portion thereof. If the training required or encouraged employees to affirmatively support or agree with conduct that conflicts with the employee's religious beliefs, or signal their support of certain values that conflict with the employee's religious beliefs, it would be more difficult for an employer to establish that it would pose an undue hardship to accommodate an employee who objects to participating on religious grounds. *Brennan v Deluxe Corp.*, supra at 46-47 quoting *EEOC Compliance Manual, The U.S. Equal Employment Opportunity Commission*, https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_Toc203359519 (last accessed May 4, 2021).

*See also Tabura v. Kellogg USA*, 880 F.3d 544 (10th Cir. 2018); *Buonanno v. AT&T Broadband, LLC*, 313 F.Supp 2d 1069 (D. Colo. 2004).

The trial court was correct in its recitation of its burden shifting process in evaluating and deciding Defendants-Appellees' motion for summary judgment, but

the court failed grievously in its execution of that analysis. "'If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.' *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)." *Gonzalez v Stringer*, 2010 US Dist LEXIS 78759, at *9 (D Conn Aug. 4, 2010, No. 08CV1102 (WWE)). Defendants-Appellants did not meet their burden in establishing their entitlement to summary judgment.

The trial court cited to *Weinstock v Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000) in articulating the standard by which it evaluated the appropriateness of summary judgment. In *Weinstock*, this Court held:

> Summary judgment is now appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). When viewing the evidence, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990).
>
> Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. When the motion is made, we go beyond the paper allegations of the pleadings, which were enough to survive the common law demurrer. The time has come, as James and Hazard put it, "to put up or shut up." Fleming

James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* 150 (2d ed. 1977). Accordingly, unsupported allegations do not create a material issue of fact. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). *Id.* at 41.

The most integral fact in this case is indeed undisputed, to wit: that Defendants-Appellees fired Plaintiff-Appellant because he refused to attend the "cultural competency training" put on by the local LGBTQ Pride Center despite his employer mandating his attendance. Defendants-Appellees do not dispute the sincerity of Plaintiff-Appellant's faith-based objection to the training, or that he sought an accommodation so that he would not have to violate his religious beliefs in order to maintain his job. Defendants-Appellees also do not dispute that Plaintiff-Appellant was not afforded a hearing or any formal process prior to his termination.

However, Defendants-Appellees introduced new "facts" (disputed) for the first time in connection with their motion for summary judgment, and they did so by the introduction of self-serving affidavits signed by the individually-named defendants and an affirmation by defense counsel. The trial court acknowledged that only affidavits were submitted in support of defendants motion and that those affidavits are not in admissible form, but says that they do not have to be in admissible form so long as the evidence would be in admissible form when presented to the jury and witness testimony is admissible (see, Order On Motion For Summary

Judgment at p. 10). Relying upon *Smith v City of NY*, 697 F App'x 88 (2d Cir 2017), the trial court wrote, "The fact that the witnesses have not been cross-examined does not render their testimony inadmissible." The case cited is inapposite. It deals with business records. In that case, surely the records could come in at trial if certified or through the testimony of a custodian of the records. Affidavits could never under any circumstances by admitted at trial. Testimonial evidence is accepted but, again, only where those witnesses are subject to cross-examination. This is a benchmark of our justice system. *See, e.g., Crawford v. Washington*, 541 U.S. 36 (2004). The trial court relied upon these affidavits in determining that summary judgment is appropriate, which was wholly improper. "[T]he court considering a summary judgment motion 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Jasco Tools, Inc. v Dana Corp. (In re Dana Corp.)*, 574 F3d 129, 151-152 (2d Cir. 2009) *(internal citation omitted)*. Affidavits by interested parties who have not even been deposed or subjected to cross-examination, and have not been observed by a judge or jury to assess their demeanor and other indicia of credibility, or lack thereof, clearly should not be relied upon by the court in deciding that a party is entitled to summary judgment. *See, e.g., Agosto v. INS*, 436 U.S. 748, 756 (1978). Even less reliable is an affidavit by an attorney. Defendants-Appellees' counsel in this case submitted an affidavit in support of his clients' motion for summary judgment, averring facts of which he has no personal,

13

first-hand knowledge. Even though it is unmistakably clear that an attorney affidavit should not be relied upon insofar as the affiant purports to relay facts to the court, the trial court in this case wrote in its Order that an attorney affidavit was the appropriate vehicle by which to convey these facts.

The trial court placed a burden on Plaintiff-Appellant to submit evidence in admissible form to rebut defendants' assertion of the undisputed nature of its unsupported allegations, but this contradicts the very standard cited above that the burden is on defendants. "When a non-moving party fails to respond to a motion for summary judgment, 'the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.' *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004)." *Gonzalez v Stringer*, 2010 US Dist LEXIS 78759, at *8-9 (D Conn Aug. 4, 2010, No. 08CV1102 [WWE]).

Whether or not the form of the motion and opposition were improper, it cannot be overlooked that all employees have a right to religious accommodation in the workplace. *See, e.g., We the Patriots USA, Inc. v Hochul*, 2021 U.S. App. LEXIS 32880 (2d Cir. Nov. 4, 2021, Nos. 21-2179, 21-2566). Employers cannot force their employees to choose between adhering to the dictates of their faith and continued employment. *Id.* Specifically, "Title VII makes it unlawful for employers 'to discharge . . . or otherwise to discriminate against any individual' in his or her employment 'because of such individual's . . . religion.' 42 U.S.C. § 2000e-2(a)(1).

The statute defines "religion" to include 'all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on…the employer's business.' *Id.* § 2000e(j); *see Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 66, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977); *cf. EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 770, 135 S. Ct. 2028, 192 L. Ed. 2d 35 (2015)." *Id.* at *47.

Defendants-Appellees never meaningfully explored the possibility of accommodating Plaintiff-Appellant and therefore cannot establish that exempting Plaintiff-Appellant from the objected-to training would have caused undue hardship. Thus, not only was the award of summary judgment to Defendants-Appellees improper, but an eventual award of summary judgment to Plaintiff-Appellant on his state and federal religious discrimination claims is unavoidable. *See, e.g., Baker v Home Depot*, 445 F3d 541, 546 (2d Cir 2006) ("Once a prima facie case is established by the employee, the employer 'must offer [him or her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship.' *Cosme v. Henderson*, 287 F.3d 152, 158 [2d Cir. 2002]" and "[A]ll plaintiffs who seek to make out a prima facie case of religious discrimination must show that '(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were

disciplined for failure to comply with the conflicting employment requirement."
*Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 [2d Cir. 2001]").

## V.    CONCLUSION

Plaintiff-Appellant respectfully requests that this Court vacate the Judgment entered by the lower court, reverse the award of summary judgment and denial of Plaintiff-Appellant's motion(s) to compel discovery and extend the discovery deadlines, extend the discovery deadline for a minimum of six months from the date of this Court's order, together with such other and further relief as this Court may deem just and proper.

Dated: May 31, 2022

s/Kristina S. Heuser
KRISTINA S. HEUSER, ESQ.
KRISTINA S. HEUSER, PC
*Attorney for Plaintiff-Appellant*
23 Birch Hill Road
P.O. Box 672
Locust Valley, New York 11560
(516) 676-1565

# SPECIAL APPENDIX

i

## TABLE OF CONTENTS

**Page**

Order of the Honorable Geoffrey W. Crawford,
  dated February 16, 2022, Appealed From ............. SPA-1

Judgment, dated February 16, 2022, Appealed From  SPA-28

SPA-1

UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAYMOND ZDUNSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 1:19-cv-940-GWC |
| | ) |
| ERIE 2-CHAUTAUQUA-| ) |
| CATTARAUGUS BOCES, DAVID | ) |
| O'ROURKE, in his official capacity, JOHN | ) |
| O'CONNOR, in his official capacity, | ) |
| BRIAN LIEBENOW, LAURIE BURGER, | ) |
| TRACY SMITH-DENGLER, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**
**(Doc. 26)**

Plaintiff Raymond Zdunski has sued Defendants Erie 2-Chautauqua-Cattaraugus Board

of Cooperative Educational Services ("BOCES" or "E2CCB"), and BOCES officials David

O'Rourke, John O'Connor, Brian Liebenow, Laurie Burger, and Tracy Smith-Dengler

(collectively, "Defendants"), for claims arising from Mr. Zdunski's termination of employment

following his failure to attend mandatory LGBTQ anti-discrimination trainings. (Doc. 1.) The

complaint alleges religious discrimination in violation of Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, disparate treatment and retaliation in violation of

42 U.S.C. § 1983, and conspiracy to interfere and neglect in preventing interference with civil

rights in violation of 42 U.S.C. §§ 1985 and 1986. Plaintiff also asserts claims under New York

State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296.

Defendants have moved for summary judgment under Fed. R. Civ. P. 56 on the grounds

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. (Doc. 26-26 at 1.) In response, Plaintiff opposes Defendants' motion for summary

judgment or, in the alternative, requests entry of summary judgment in favor of Plaintiff. (Doc. 27.)[1]

**Factual Background**

Plaintiff has brought several constitutional and statutory claims against Defendants. Because Defendants have moved for summary judgment, the court views the facts in the light most favorable to Plaintiff and resolves all factual disputes in Plaintiff's favor. Fed. R. Civ. P. 56(c). Where a party fails to support an assertion of fact or fails to properly address another party's assertion of fact, the court may grant summary judgment if the motion and supporting materials show that the movant is entitled to it. Fed. R. Civ. P. 56(e).

**I.     Plaintiff's Employment and Termination**

Plaintiff began working at BOCES beginning in June 2011 as an Account Clerk in the BOCES Central Business Office. (Doc. 26-25 ¶ 7; Doc. 27-1 ¶ 7.) BOCES is a public education collaborative in New York State that functions as an extension of local school districts. (*See* Doc. 1 at 2.) Under BOCES policy, "all E2CCB employees are required to complete training in conjunction with existing professional development training to raise staff awareness and sensitivity of harassment and discrimination directed at students." (Doc. 26-25 ¶ 4.) After becoming aware that a transgender BOCES employee had requested accommodations to facilitate a gender transition, BOCES leadership decided that, in addition to providing gender-neutral bathrooms, LGBTQ anti-discrimination training was necessary to "maintain an environment free of harassment and discrimination." (Doc. 25 ¶ 6; Doc. 26-5 ¶ 4.) This training supplemented the mandatory Dignity for All Students Act ("DASA") anti-discrimination training

---

[1] Argument on Defendants' Motion for Summary Judgment was scheduled for December 17, 2021 at 10:00 AM. Counsel for Plaintiff did not attend. This ruling relies solely on the written submissions to the court in the record.

all BOCES employees are required to undertake as a condition of their employment. (Doc. 26-2

¶ 8; Doc. 26-16 at 1 ("Training will be provided each school year for all E2CC BOCES

employees in conjunction with existing professional development training. . . .").) BOCES non-

discrimination and anti-harassment policies apply to all employees, regardless of whether the

employee has contact with students, including by applying "to the dealings between or among

employees with employees . . . and others who do business with the School District, as well as

school volunteers, visitors, guests and other third parties." (Doc. 26-14 at 1.) The E2CCB non-

discrimination training policy requires training on, among other topics, "awareness and

sensitivity to discrimination or harassment and civility in the relations of people of different . . .

religions, religious practices . . . , sexual orientations, genders and sexes." (Doc. 26-26 at 2.)

In February 2018, Plaintiff was directed to attend a mandatory training facilitated by the

local "Pride Center" on "LGBTQ Cultural Competency." (*Id.*) Plaintiff declined to attend the

training on the basis that "he is a devout Christian and, as such, his beliefs regarding

homosexuality are dictated to him by holy scripture. Plaintiff did not want to be forced to listen

to indoctrination that is in contradiction to the tenets of his faith." (Doc. 1 at 4–5.) Plaintiff

notified his supervisor Ms. Smith-Dengler via email that he would not be attending the training

and requested a training to teach greater cultural sensitivity towards persons of faith. (Doc. 4

¶ 21.) Plaintiff did not attend the February 2018 training. (Doc. 1 at 5; Doc. 4 ¶ 22.)

Around the same period, Plaintiff posted a public statement on his Facebook page during

working hours that criticized BOCES' choice to conduct a mandatory "sensitivity training

session on the LGBTQ community" and stated that he would not be "forced to condone this

lifestyle." (Doc. 26-12.) BOCES Executive Director of Human Resources Ms. Burger

documented this incident because she was concerned that this post violated BOCES Policy Use

of Computerized Information which prohibits personnel from posting "any material which may result in the disruption of classroom or E2CCB activities" on social networking sites. (*See* Doc. 26-3 ¶ 8; Doc. 26-5 ¶ 9.)

Following Plaintiff's failure to attend the February 2018 training, Ms. Burger sent an email advising all employees who did not attend the first training to attend a make-up training session in May 2018. (Doc. 1 at 5; Doc. 4 ¶ 23.) Plaintiff replied to this email inquiring about the specific objectives of the training. (Doc. 1 at 5; Doc. 4 ¶ 24.) Ms. Burger responded that the topics to be covered included, among other things, "[r]ecognizing the difference between sex & gender, understanding aspects of identity, understanding how beliefs/feelings/values perpetuate oppression." (*Id.*) Plaintiff again requested that BOCES provide a similar training aimed at countering discrimination against Christians. (Doc. 1 at 6; Doc. 4 ¶ 27.) Although Plaintiff alluded to concerns with workplace discrimination against Christians in this email, he did not ever lodge a formal grievance or complaint alleging religious discrimination. (Doc. 26-3 ¶ 22.) Ms. Burger's response notified Plaintiff that all employees must attend the May 2018 training or face disciplinary action, including possible termination. (Doc. 1 at 6; Doc. 4 ¶ 28.)

On May 18, 2018, Ms. Smith-Dengler directed Plaintiff to attend a meeting with BOCES leadership and Plaintiff's union representative on May 21, 2018. (Doc. 1 at 6; Doc. 4 ¶ 31.)  The purpose of this meeting was to discuss his failure to attend the first training. (*Id.*) This meeting followed standard BOCES practices for addressing workplace expectations and conflicts through counseling with the employee, supervisor, and Human Resources or union representative. (Doc. 26-3 ¶ 12.) Ahead of this meeting, Mr. Liebenow, Executive Director of Labor Relations and General Counsel for BOCES, discussed Plaintiff's refusal to attend the first anti-discrimination training with District Superintendent David O'Rourke, Ph.D. (Doc. 26-3 ¶ 11.)

4

Dr. O'Rourke and Mr. Liebenow determined that there were sufficient grounds to terminate his employment prior to the rescheduled training due to then-existing insubordination, but instead decided to give Plaintiff another opportunity "to learn more about the training and to follow all reasonable directives of his supervisor." (*Id.*)

During the May 21, 2018 meeting, Ms. Smith-Dengler issued Plaintiff a "counseling memo" for alleged insubordination, which directed Plaintiff to attend the LGBTQ training the following day or else face discipline up to and including termination. (Doc. 1 at 6; Doc. 4 ¶ 33.) Plaintiff, Ms. Smith-Dengler, Mr. Liebenow, and Plaintiff's union representative attended this counseling meeting to discuss Plaintiff's Facebook post and to clarify that the training was not about religion, but rather was "an informational session mandatory for all E2CCB staff." (*Id.* ¶ 13.) Plaintiff signed the counseling memo and stated he would not be attending the rescheduled training. (*Id.* ¶ 16; Doc. 26-10.) Although he was at work on the day of the rescheduled training, he did not attend. (Doc. 1 at 6; Doc. 4 ¶ 34.)

Following Plaintiff's failure to attend the rescheduled training, Mr. Liebenow met again with Plaintiff, Ms. Smith-Dengler, Ms. Burger, and Plaintiff's union representative. (Doc. 1 at 6; Doc. 4 ¶ 35.) During this meeting, Plaintiff acknowledged that he knew that his refusal to attend the make-up training could result in his termination. (Doc. 26-3 ¶ 19.) On May 30, 2018, Mr. Liebenow terminated Plaintiff's employment for insubordination due to his failure to attend the LGBTQ anti-discrimination training. (*Id.*) Following his termination, Plaintiff filed an application for unemployment benefits which was denied on the basis that Plaintiff had been fired for misconduct. (Doc. 1 at 7.)

SPA-6

## II.     Administrative Proceedings

Plaintiff filed a complaint with the New York State Division of Human Rights alleging unlawful discriminatory practice related to employment in violation of N.Y. Exec. Law, § 296, Art. 15. (Doc. 23-21 at 1.) On February 27, 2019, the State Division of Human Rights determined there was no probable cause to believe Plaintiff suffered any unlawful discrimination. (*Id.*) On appeal, the U.S. Equal Employment Opportunity Commission ("EEOC") adopted the findings of the State Division of Human Rights and dismissed the complaint. (Doc. 26-22 at 1.) Plaintiff's exhaustion of available administrative remedies provides this court with jurisdiction to adjudicate Plaintiff's Title VII claims. 42 U.S.C. § 2000e-5(c).

## Analysis

Plaintiff argues that the LGBTQ training was "aimed at changing his religious beliefs about gender and sexuality," and that attending the training "would have caused him to violate the religious teachings to which he adheres." (Doc. 1 at 1.) Plaintiff alleges seven causes of action arising out of BOCES' decision to terminate his employment due to his refusal to attend the trainings: (1) violation of the Due Process Clause of the 14th Amendment under 42 U.S.C. § 1983; (2) violation of the Equal Protection Clause of the 14th Amendment under 42 U.S.C. § 1983; (3) conspiracy to interfere with civil rights under 42 U.S.C. § 1985; (4) neglect in preventing interference with civil rights under 42 U.S.C. § 1986; (5) failure to accommodate under Title VII; (6) disparate treatment and disparate impact under Title VII; and (7) religious discrimination in employment under the NYSHRL, N.Y. Exec. Law § 296.[2]

---

[2] Plaintiff correctly notes that Defense counsel "mischaracterizes Plaintiff's constitutional claims" by addressing a First Amendment violation Plaintiff did not assert. (Doc. 26-26 at 1–3; Doc. 27 at 2.) The court shall address only the seven causes of action raised in Plaintiff's Complaint.

SPA-7

Defendants seek summary judgment on each of these claims, which the court considers below. First, the court recites the applicable standard of review and addresses an issue regarding the adequacy of discovery in this case.

## I.      Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he court must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). However, "to show a genuine dispute, the nonmoving party must provide hard evidence, from which a reasonable inference in its favor may be drawn. Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuinely disputed fact." *Hayes v. Dahlke*, 976 F.3d 259, 267–68 (2d Cir. 2020) (cleaned up). Although the court "must disregard all evidence favorable to the moving party that the jury is not required to believe," the court credits "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* The district court is empowered to enter summary judgment to the nonmoving party *sua sponte* so long as the moving party was on notice. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (citing 10A Wright & Miller, *Federal Practice and Procedure* § 2720 (3d ed. 1983)).

## II.     Discovery Disputes and Compliance

As a preliminary matter, the court addresses Plaintiff's arguments raised in opposition to Defendants' motion for summary judgment regarding the "incomplete" discovery in this case.

7

(*See* Doc. 27 at 5.) Plaintiff writes that "Defendants and the Court have precluded meaningful discovery in this case . . . [and] nearly the entirety of the 'evidence' presented in support of Defendants' motion for summary judgment are self-serving affidavits," and thus argues summary judgment at this phase is premature. (*Id.* at 6.) Defendants respond that the lack of discovery in the case "is due to Plaintiff's repeated failure to comply with the Scheduling Orders of this Court," and so should not form the basis of any decision. (Doc. 28 at 5.)

"The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the [record] that demonstrate the absence of a genuine issue of material fact." Fed. R. Civ. P. 56(c). This initial burden must be met by citing relevant portions of pleadings, interrogatories, depositions, and other materials in the record, or by providing additional affidavits. *Id.* Once the moving party's burden has been met, the nonmoving party is then obliged to proffer evidence showing a dispute of material fact or by showing that the materials do not establish the presence of a genuine dispute, as "unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000); *see also* Fed. R. Civ. P. 56(c)(1)(A)–(B). If the nonmoving party shows by affidavit or other affirmative proof that it cannot present facts essential to justify its position, the court may defer consideration of summary judgment, permit additional time for discovery, or issue any other appropriate order. Fed. R. Civ. P. 56(d).

### 1.    Fed. R. Civ. P. 56(d)

To the extent that Plaintiff's assertion that "Defendants and the Court have precluded meaningful discovery in this case," seeks a deferral under Fed. R. Civ. P. 56(d), the court will address whether Plaintiff has been deprived of discovery materials sufficient to support a delay in judgment. A party seeking to delay resolution of a summary judgment motion under Rule

56(d) must submit an affidavit describing the discovery materials sought, and must include more than "a bare assertion that the evidence supporting a plaintiff's allegation in the hands of the defendant is insufficient." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)). Here, Plaintiff has not provided an affidavit identifying any specific reasons why it cannot present facts essential to justify its opposition as required by Rule 56(d). Prior discovery delays largely resulted from Plaintiff's counsel joining a new law firm, undertaking an "extremely busy" schedule, and falling "woefully behind in meeting the agreed upon discovery deadlines." (Doc. 13 at 2–3.) Defendant's Rule 26 disclosures dated July 7, 2021 included a list of individuals likely to have discovery information, internal BOCES human resources correspondence and documentation, BOCES policies and procedures, records of Plaintiff's application for unemployment benefits, and extensive documentation from the prior proceedings before the New York State Division of Human Rights, which Defendant notes contained the same affidavits now submitted in the present proceeding. (Doc. 22-4; Doc. 28 at 4, n.2.) Plaintiff's counsel's failure to depose any witnesses within the set discovery schedule does not now justify a finding that summary judgment is premature. The court declines to defer judgment under Rule 56(d).

### 2.   Fed. R. Civ. P. 56(c)

Plaintiff disputes many of Defendants' factual allegations surrounding his termination. (*See* Doc. 27 at 6; Doc. 27-1.) But Plaintiff has not cited to or provided any actual evidence that would establish a genuine dispute of material fact. *See Weinstock*, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact."). Rather, Plaintiff argues that Defendants' evidence is not in an "admissible form" and that "[a] self-serving affidavit by a party to the action is insufficient." (Doc. 27-1 ¶ 1.) In sum, Plaintiff reasons that because the

9

SPA-10

court "must disregard all evidence favorable to the moving party that the jury is not required to believe," and because a jury would not necessarily be required to believe witness testimony, the court must therefore disregard all affidavits attached to Defendants' motion for summary judgment. (*Id.* (citing, among other cases, *Reeves*, 530 U.S. at 151; *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 332 (2d Cir. 1986)).)

Although Plaintiff is correct in writing that a party may object to a fact that is not supported by admissible evidence, *see* Fed. R. Civ. P. 56(c)(2), "material relied on at summary judgment need not be admissible in the form presented to the district court. Rather, so long as the evidence in question will be presented in admissible form at trial, it may be considered on summary judgment." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017). Here, the witness affidavits contain sworn testimony, based on the firsthand knowledge of the testifying sources, and would likely be admissible testimony at trial in some form. The fact that the witnesses have not been cross-examined does not render their testimony inadmissible. Indeed, Plaintiff had the opportunity to confront the named witnesses in deposition, but the court sees no evidence that he elected to do so.

In addition, by asking the court to have "occasion to observe the witness and assess their demeanor and other indicia of credibility," (*see* Doc. 27 at 6) Plaintiff asks the court to reach a credibility determination, a role strictly reserved to the jury at trial. *See Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) ("In reviewing the evidence and the inferences that may reasonably be drawn on a motion for summary judgment, a court may not make the credibility determinations or weigh the evidence; credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (cleaned up). The line of cases Plaintiff cites for the proposition that because the affidavits could

10

be rejected by a jury at trial the court must now disregard them is inapposite, as those cases involve credibility, weight, or persuasiveness determinations reached by the jury at trial and may not be undertaken by the judge at summary judgment.

Last, in response to Plaintiff's objection to Defendants' attorney affidavit, Defendants are correct in noting that the moving attorney affidavit is the procedural mechanism through which factual information is conveyed to the court and is not itself considered as evidence. (Doc. 28 at 4, n. 2.); *See* W.D.N.Y. Loc. R. Civ. P. 7(a)(3) ("motions and opposition to motions shall be supported by at least one (1) affidavit, declaration, or affirmation, and by other such evidence . . . as appropriate to resolve the particular motion."). Defendants' use of affidavits, correspondence, and documentation to support their motion for summary judgment is both proper and necessary in establishing the factual basis for their motion. *See* Fed. R. Civ. P. 56(c) (allowing the moving party to meet their burden of proof by providing affidavits); W.D.N.Y. Loc. R. Civ. P. 7(a)(3) (noting that failure to include an affidavit or other evidence in support of the motion or opposition may be grounds for resolving the motion against the non-complying party). Once a defendant has alleged sufficient facts to support judgement in their favor, it becomes the plaintiff's burden to rebut the allegations with specific evidence showing that material facts remain in dispute. *See Celotex*, 477 U.S. at 324 (1986) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own [evidence] . . . designate specific facts showing that there is a genuine issue for trial.") (cleaned up). Whether Plaintiff has met this burden shall be addressed below.

### III.     Religious Discrimination Claims

Mr. Zdunski seeks a religious exemption from a policy that concerns trainings on gender expression. Mr. Zdunski believes his compliance with the policy would render him complicit in

conduct he considers contrary to his religious beliefs. (Doc. 27 at 1.)[3] With this context in mind, the court turns to Mr. Zdunski's religious discrimination claims.

A.    **Disparate Treatment and Disparate Impact (Counts 2, 6, and 7)**

Claims of employment discrimination under the NYSHRL are analyzed under the same framework applied to Title VII and § 1983 Equal Protection claims for employment discrimination, and so the court addresses counts 2, 6, and 7 together. *See Chick v. Cnty. of Suffolk*, 546 F. App'x 58, 59 (2d Cir. 2013) ("Section 1983 employment discrimination claims asserted as equal protection violations are evaluated under the same standards as Title VII claims"); *see also Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) ("[A] plaintiff's discrimination claims under . . . NYSHRL . . . are subject to the burden-shifting analysis applied to discrimination claims under Title VII"); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) ("Claims of employment discrimination under the NYSHRL are analyzed

---

[3] This type of claim has been termed a "complicity-based conscience claim." *See* NeJaime & Siegel, *Conscience Wars: Complicity-Based Conscience Claims in Religion and Politics*, 124 Yale L.J. 2516 (2015); Esther Ju, *Unclear Conscience: How Catholic Hospitals and Doctors are Claiming Conscientious Objections to Deny Healthcare to Transgender Patients*, 2020 U. Ill. L. Rev. 1289, 1290 (2020). Complicity-based conscience claims differ from traditional free exercise and religious discrimination claims. Historically, litigants have used the First and Fourteenth Amendments to limit external meddling—by employers, co-workers, or the state—in the private sphere of religious belief. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205 (1972) (limiting state authority to compel Amish parents to send children to high school); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) (seeking an individual religious exemption from working on the Sabbath). By contrast, complicity-based conscience claims seek to excuse the litigant from complying with an otherwise lawful practice they believe to be in tension with their religious beliefs in a manner that limits the rights of individuals who do not share their faith practice. *See, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (permitting a private employer to deny medical insurance coverage for contraception to its employees based on the company's religious objections); *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719 (2018) (ruling in favor of a baker whose sincerely-held religious views militated against creating wedding cakes for same-sex couples). In essence, "[c]omplicity claims are faith claims about how to live in community with others who do not share the claimant's beliefs, and whose lawful conduct the person of faith believes to be sinful." NeJaime & Siegel, 124 Yale L.J. at 2519.

under the same *McDonnell Douglas* framework applied to Section 1983 and Title VII claims of employment discrimination.").

Title VII of the Civil Rights Act of 1964 prohibits both intentional discrimination (known as "disparate treatment") and, in some cases, facially neutral policies and practices that have a "disproportionately adverse effect on minorities" (known as "disparate impact"). *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). To prevail on a disparate treatment claim, the plaintiff must show "that the defendant had a discriminatory intent or motive" for taking an adverse action. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985–86 (1988). To prevail on a disparate impact claim, the plaintiff must show that an employer uses "a particular employment practice that causes a disparate impact on the basis of [a protected class]." 42 U.S.C. § 2000e-2(k)(1)(A)(i). An employer may defend against a disparate impact claim by showing the practice is "job related for the position in question and consistent with business necessity," and that an alternative employment practice with a less disparate impact that serves the employer's legitimate needs is unavailable. *Id.* § 2000e-2(k)(1)(A)(ii) and (C). *See Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 382 (2d Cir. 2006) (describing the burden-shifting analysis for disparate impact claims). Each of these claims are discussed in turn.

1. **Disparate Treatment**

Plaintiff's Title VII, § 1983, and NYSHRL disparate treatment claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (applying the *McDonnell Douglas* framework to a religious discrimination claim). Under this framework, plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that he: (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was

13

discharged; and (4) that his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class. *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). If a *prima facie* showing is made, the burden then shifts to the defendant to proffer a non-discriminatory reason for their action. *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019). After the employer articulates legitimate, non-discriminatory reasons for the employee's discharge, the employee "must be afforded an opportunity to prove the existence of factual issues demonstrating that the stated reasons were merely a pretext for discrimination." *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985). An employee meets this ultimate burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256–57 (1981).

There is no real dispute as to the first and third prongs of the *McDonnell Douglas* framework because Mr. Zdunski was an adherent of the Christian faith and he was fired. Despite Defendants' conclusory assertion that Mr. Zdunski is not a member of a protected class, it is not unheard-of for a court to permit non-minority plaintiffs to proclaim membership in a protected class. *See, e.g., Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 81 (1977) ("[D]iscrimination is proscribed when it is directed against majorities as well as minorities"); *see also Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 455 (S.D.N.Y. 2012) (finding an evangelical Christian a member of a protected class). Although an individual with an "objection to homosexuality" would not suffice as a protected class (*see* Doc. 1 at 8), Mr. Zdunski's assertion of genuine religious faith is sufficient to establish his membership in a protected class. Accordingly, the court finds Mr. Zdunski may assert membership in a protected class on the

basis of his religion, and in so doing takes Congress at its word: "It shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

As to the second prong, Defendants do not dispute that Mr. Zdunski was qualified to serve as an Account Clerk and generally performed his duties satisfactorily, though the parties dispute whether Mr. Zdunski enjoyed an "unblemished record of employment," prior to his decision to boycott the anti-discrimination trainings. (*See* Doc. 1 at 4; Doc. 4 ¶ 15.)

Turning to the fourth prong, the parties dispute whether Plaintiff has provided record evidence which if believed by the factfinder would prove that his termination occurred under circumstances giving rise to an inference of discrimination. An inference of discrimination can arise from a variety of circumstances "including, but not limited to, 'the employer's criticism of the plaintiff's performance in degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or in the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Liebowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). A showing of disparate treatment—that is, a showing that Plaintiff was treated "less favorably than a similarly situated employee outside his protected group"—also supports an inference of discrimination for purposes of making out a *prima facie* case. *Graham*, 230 F.3d at 39. The court considers the totality of the evidence in the light most favorable to Mr. Zdunski to evaluate whether he has met the requirements for a *prima facie* Title VII discrimination claim. *See Bockus v. Maple Pro, Inc.*, No. 5:19-cv-237, 2020 WL 5015432, at *4 (D. Vt. June 19, 2020).

Although the "burden of establishing a *prima facie* case of disparate treatment is not onerous," the plaintiff must still prove by a preponderance of the evidence that he or she suffered adverse employment action under circumstances giving rise to an inference of unlawful discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). At the summary judgment phase, this requires the nonmoving party to cite to evidence in the record from which a reasonable inference of discrimination may be drawn. *See Hayes*, 976 F.3d at 267–68; Fed. R. Civ. P. 56(c).

The court has considered the alleged sequence of events leading to Mr. Zdunski's discharge. Defendants allege, and Mr. Zdunski does not provide any evidence to the contrary, that prior to Mr. Zdunski's termination, he had told a colleague that she was "living in sin" because she was in a relationship with a man to whom she was not married (Doc. 26-25 ¶ 11; Doc. 26-6 ¶ 7), and discussed his "unwavering intolerance for those who did not share his heteronormative views about gender and sexuality" with colleagues. (Doc. 26-4 ¶ 9.) When Mr. Zdunski learned the "male" bathroom at the office had been converted into a gender-neutral bathroom, he said he would not share a bathroom with "those people," and said there "should be locks on the door to prevent 'those people' from walking in on him." (Doc. 26-6 at 6.)

After becoming aware that a transgender BOCES employee had requested accommodations to facilitate a gender transition, BOCES leadership decided that all employees must undergo training to "maintain an environment free of harassment and discrimination," as was their legal obligation under New York State Law. (*See* Doc. 25 ¶ 6; Doc. 26-2 ¶ 8; Doc. 26-5 ¶ 4); DASA, N.Y. Educ. Law Tit. 1 Art. 2 § 13 (McKinney 2018) (requiring all school employees, regardless of whether they work directly with students, to undergo annual trainings in, among other areas, "the social patterns of harassment, bullying and discrimination . . . based

on a person's actual or perceived . . . sexual orientation, gender or sex"). According to Mr.

Zdunski, Defendants' decision to terminate his employment for refusing to attend this training

"amounts to unlawful religious discrimination." (Doc. 27 at 2.) Defendants maintain that Mr.

Zdunski was not terminated because of his religion; "he was terminated because he did not

attend a mandatory training session." (Doc. 26-26 at 8–9.)

Plaintiff's blanket denials of the allegations contained in the motion for summary

judgment are insufficient to create a genuine dispute of material fact. To assert a genuine dispute

of material fact, a party must cite to particular materials in the record that support their assertion.

Fed. R. Civ. P. 56(c)(1). "[R]eliance on legal conclusions—unsupported by specific facts—and

general denials does not create a genuine factual dispute under Rule 56." *Montauk Oil Trans.*

*Corp. v. Sonat Marine Inc.*, No. 84 Civ. 4405, 1986 WL 1805, at *8 (S.D.N.Y. Feb. 3, 1986); *see*

*also Hayes*, 976 F.3d at 267–68 ("Conclusory allegations, conjecture, and speculation . . . are

insufficient to create a genuinely disputed fact."). Any failure to specifically controvert facts set

forth by the moving party with "record references allows the Court to deem the facts proffered

by the moving party admitted for purposes of a summary judgment motion." *Edmonds v. Seavey*,

No. 08 Civ. 5646 (HB), 2009 WL 2949757, at *1 n.2 (S.D.N.Y. Sept. 15, 2009).

Even drawing all reasonable inferences in Mr. Zdunski's favor, none of the facts alleged

support the claim that his termination was tainted by an inference of unlawful discrimination.

Rather, the facts alleged make clear that BOCES terminated Mr. Zdunski in response to his

failure to comply with his employer's policy mandating anti-discrimination training, even after

Mr. Zdunski was made aware that his misconduct could result in termination. Mr. Zdunski does

not allege that the anti-discrimination training would have been conducted in a malicious or

discriminatory manner or would otherwise have subjected him to unlawful harassment or

ridicule. *Cf. Hartman v. Pena*, 914 F. Supp. 225 (N.D. Ill. 1995) (finding anti-harassment

trainings violated Title VII where female employees were invited to grope male colleagues and

make derogatory comments toward male employees). Nor does Mr. Zdunski allege that his

employer segregated its employees and required only Christian employees to attend the anti-

discrimination training. *Cf. Devine v. Pittsburgh Bd. of Educ.*, No. 2:13-cv-220, 2015 WL

3646453 (W.D. Pa. June 10, 2015) (allowing a Title VII claim for racial discrimination to

proceed where only white teachers were required to undergo racial-sensitivity trainings, but

similarly situated Black teachers were not). Rather, the training sought to avoid harassment and

discrimination directed at transgender employees in a manner consistent with internal E2CCB

policy, NYSHRL, and Federal Title VII law forbidding employment discrimination on the basis

of gender expression. *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731 (2020); N.Y. Exec.

Law § 296 (McKinney 2018).

    Mr. Zdunski has not presented any evidence that the trainings were directed toward him

or other Christian employees in a discriminatory manner. Ms. Burger initiated the LGBTQ

trainings in September 2018 in response to a meeting with a transgender employee who

requested accommodations to facilitate a gender transition, more than four months before she

learned that Mr. Zdunski harbored personal opposition to the subject of the training. (Doc. 26-5

at ¶¶ 4–8.) There is no evidence that Ms. Mittner ever reported Mr. Zdunski's comments that she

was "living in sin" or any other opinions regarding gender expression to human resources. (*See*

Doc. 26-2.) Therefore, even drawing all reasonable inferences in Mr. Zdunski's favor, there is no

evidence supporting an inference that BOCES required the supplemental training because of Mr.

Zdunski's religious beliefs or his comments toward coworkers about traditional gender roles and

gender expression.

Mr. Zdunski has not presented any evidence of discriminatory intent or malice, nor any evidence that he was treated differently than other employees who refused to attend anti-discrimination trainings. There is no evidence that BOCES employees criticized Mr. Zdunski's job performance in religion-related degrading terms, nor that BOCES employees directed invidious religion-related comments to Mr. Zdunski or to other Christian employees. In the Complaint, Mr. Zdunski argues that his former supervisor, Ms. Smith-Dengler, is "an avowed atheist and discriminated against plaintiff in the context of his employment solely because she knew him to be a person of faith." (Doc. 1 at 8.) But unsupported factual allegations contained in a complaint are not evidence, and Mr. Zdunski has offered no actual showing that Ms. Smith-Dengler's acted with any discriminatory intent or malice. In fact, Ms. Smith-Dengler writes that even though she and Mr. Zdunski "shared a different way of viewing the world," Mr. Zdunski "was never defensive or hostile, and we often ended those conversations with an agreement to disagree about such topics." (Doc. 26-4 ¶¶ 7, 9.) Even assuming that Ms. Smith-Dengler is indeed "an avowed atheist," there is no reasonable inference that her atheism rendered all of her actions toward Mr. Zdunski discriminatory. If this reasoning were true, any adverse employment action taken by one individual of a particular faith practice against another individual of a different faith practice would be, on its own, evidence of religious discrimination. Fortunately, that is not the law. Construing the evidence in the light most favorable to Mr. Zdunski, the court finds no evidence that Ms. Smith-Dengler exhibited any discriminatory animus toward Mr. Zdunski.

The Complaint lacks any allegations about any similarly-situated employees—either less favorable treatment of other Christian individuals or more favorable treatment of other non-Christian individuals. Plaintiff's unsupported assumption that Defendants believe him to be

"bigoted" due to his religious beliefs is insufficient to support an inference of discrimination. (*See* Doc. 27 at 4.) In sum, no facts in the record support a finding that Mr. Zdunski was terminated because of his religion; rather, the evidence in the record supports Defendants' position that his termination was due to repeatedly refusing to attend a mandatory employee training. (*See* Doc. 26-26 at 9–10) ("Plaintiff was terminated for insubordination for his failure to attend a mandatory training program, not due to his religious beliefs.").

The fact remains that Mr. Zdunski was employed by a State agency in a State—and post-*Bostock*, a country—that recognizes gender expression and sexual orientation as protected classes on equal footing with religion for purposes of Title VII. Just as it would be "anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees . . . in order to accommodate or prefer the religious needs of others," so too would it be anomalous to allow an employer to deny a transgender employee's legal right to a workplace free of discrimination and harassment in order to accommodate the conflicting religious beliefs of other employees. *Trans World Airlines*, 432 U.S. at 64. Accordingly, Plaintiff's disparate treatment claims brought under Title VII and NYSHRL are without merit.

Plaintiff also brings a § 1983 claim for violation of his constitutional right to equal protection under the law pursuant to the Fourteenth Amendment of the U.S. Constitution. (Doc. 1 at 8.) Once a plaintiff has established action under color of state law, the same analytical framework applies to discrimination claims brought under Title VII and § 1983. *See Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 20 (2d Cir. 2013) ("In the context of a § 1983 suit where the color of state law is established, an equal protection claim parallels a Title VII employment discrimination claim.") (cleaned up). "[Section] 1983 and the Equal Protection Clause protect

public employees from various forms of discrimination, including . . . disparate treatment"

claims. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Plaintiff has failed to establish a

claim for disparate treatment pursuant to Title VII, and so his § 1983 claim is dismissed.

### 2.    Disparate Impact

Plaintiff also brings a disparate impact claim under Title VII of the Civil Rights Act of

1964. The Second Circuit follows a three-part burden shifting analysis for disparate impact

claims:

> The Title VII plaintiff bears the initial burden of establishing a *prima facie* showing
> of disparate impact. To do so, the plaintiff must first identify the employment
> practice allegedly responsible for the disparities. The plaintiff must then produce
> statistical evidence showing that the challenged practice 'causes a disparate
> impact on the basis of race, color, religion, sex, or national origin.' Once the
> plaintiff has established a *prima facie* case of disparate impact discrimination, the
> defendant has two avenues of rebuttal. First, the defendant may directly attack
> plaintiff's statistical proof by pointing out deficiencies in data or fallacies in the
> analysis. Second, the defendant may rebut a plaintiff's prima facie showing by
> 'demonstrat[ing] that the challenged practice is job related for the position in
> question and consistent with business necessity.' . . . Finally, if the defendant meets
> the burden of showing that the challenged practice is job related, the plaintiff can
> only prevail by showing that 'other tests or selection devices, without a similarly
> undesirable [discriminatory] effect, would also serve the employer's legitimate
> interest in efficient and trustworthy workmanship.

*Gulino*, 460 F.3d at 382 (cleaned up). The "touchstone" of the disparate impact analysis is

business necessity, since a practice that is irrelevant to job performance that operates to exclude

individuals of a protected class is per se prohibited. *Griggs v. Duke Power Co.*, 401 U.S. 424,

431 (1971).

Plaintiff has failed to make out a *prima facie* case of disparate impact discrimination.

Although Plaintiff identified an employment practice allegedly responsible for disparate

impact—mandatory anti-discrimination trainings on sexual orientation and gender expression—

he has not proffered any evidence showing how this employment practice had a disparate impact

on members of his protected class. Indeed, Plaintiff does not provide any evidence that even one other employee also suffered a negative employment action due to the policy, let alone other members of his protected class. Nor has Plaintiff directly challenged the constitutionality of the DASA requirement for annual anti-discrimination trainings. Accordingly, Plaintiff's disparate impact claim is dismissed.

**B.     Failure to Accommodate (Count 5)**

An employer must reasonably accommodate an employee's religious observance or practice unless the accommodation would exert undue hardship on the conduct of the employer's business. 42 U.S.C. § 2000e(j); *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985). To assert a failure to accommodate claim, a plaintiff must show that (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement. *Id.*; *see also Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001); *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). If the Plaintiff makes a *prima facie* showing of failure to accommodate, "the burden shifts to the employer to show that it cannot reasonably accommodate the plaintiff without undue hardship on the employer's business." *Philbrook*, 757 F.2d at 481.

It is reasonable to infer that Mr. Zdunski's religious beliefs, insofar as they concern sexual orientation and gender expression, are bona fide and sincerely held, and that Mr. Zdunski believes his religious views conflicted with the substance of the mandatory employment trainings. All parties agree Mr. Zdunski communicated his religious beliefs to Defendants and expressed his personal opposition to the mandatory trainings. (Doc. 1 at 5; Doc. 4 ¶ 21.) Similarly, all parties agree Mr. Zdunski was terminated for his failure to attend the mandatory

trainings. (Doc. 1 at 7; Doc. 4 ¶ 35.) Therefore, Plaintiff has pleaded sufficient facts to make out a *prima facie* failure to accommodate claim.

Defendants argue that accommodating Mr. Zdunski's religious beliefs by permitting him to forego mandatory anti-discrimination trainings would have created undue hardship on the employer's business operations because this accommodation would have thwarted BOCES' legal obligation to protect employees from harassment and discrimination. (Doc. 26-26 at 10.) Mr. Zdunski requested an exemption from attending the training and suggested that BOCES "provide a similar training to counter discrimination against Christians." (Doc. 1 ¶¶ 14–16.) Dr. O'Rourke considered Mr. Zdunski's request for an exception but was "unable to identify a reasonable accommodation" that did not weaken BOCES' unified message to support a transitioning employee. (*Id.*)

In the context of Title VII claims of religious discrimination, an "undue hardship" is anything "more than a de minimis cost" to the employer. *Trans World Airlines*, 432 U.S. at 84. A hardship need not be financial in nature to represent more than a de minimis cost. For instance, an accommodation that causes an employer to "lose control of its public image" is an undue hardship. *See Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 137 (1st Cir. 2004) (granting religious exemptions for grooming and presentation requirements would cause employer to lose control over its public image, which constitutes an undue hardship). Courts have also found that a religious accommodation that imposes an "adverse impact" or "substantial hardship" on co-workers or the employer constitutes an undue hardship. *See Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000) (finding that the "mere possibility of an adverse impact on co-workers as a result of [a religious accommodation] is sufficient to constitute an undue hardship") (citing *Trans World Airlines*, 432 U.S. at 81); *see also Wilson v. U.S. W. Commc'ns*, 58 F.3d

23

1337, 1341 (8th Cir. 1995) (allowing an employee to wear an anti-abortion button at work caused disruption and discord among employees and represented an undue hardship). Given that the phrases "undue hardship" and "reasonable accommodation" are relative terms and undefined by statute, "[e]ach case necessarily depends upon its own facts and circumstances, and in a sense every case boils down to a determination as to whether the employer has acted reasonably." *United States v. City of Albuquerque*, 545 F.2d 110, 114 (10th Cir. 1976), *cert. denied*, 433 U.S. 909 (1977).

Here, Mr. Zdunski's proposed accommodation—that he be excused from the mandatory LGBTQ anti-discrimination training—amounts to more than a de minimis cost to his employer's business operations. BOCES is bound by New York State law to provide annual anti-discrimination trainings for all employees and to maintain "an environment free of discrimination and harassment." *See* N.Y. Educ. Law Tit. 1 Art. 2 §§ 10, 13. Allowing Mr. Zdunski's requested accommodation to forego anti-discrimination trainings would have put his employer in the position of violating the training requirements set forth in DASA. An accommodation that would require an employer to run afoul of state law constitutes a substantial hardship and would be more than a de minimis cost to the employer. *See Weber*, 199 F.3d at 273.

In essence, Mr. Zdunski argues that the tenets of his religious beliefs run counter to New York State and Federal law insofar as these laws require employers to ensure the employment rights of individuals of varying sexual orientations and gender expressions are respected. Religious beliefs are as varied as the individuals who hold them, and the court will not pass judgment on the "diverse manners in which beliefs, equally paramount in the lives of their possessors, may be articulated." *United States v. Seeger*, 380 U.S. 163, 183 (1965). But Plaintiff's former employer is required by law to ensure the legal rights of LGBTQ employees

are protected. Allowing individuals who personally oppose the rights of transitioning individuals

in the workplace to forego anti-discrimination LGBTQ trainings would stifle their effect and

would adversely impact transitioning employees. Because the relief Mr. Zdunski seeks would

require the court to "construe the statute to require an employer to discriminate against some

employees in order to enable others to observe their [religious beliefs]," Plaintiff's Title VII

claims shall be dismissed. *Trans World Airlines*, 432 U.S. at 85.

IV.    **Section 1983 Due Process Clause Claim (Count 1)**

Plaintiff alleges a deprivation of his 14th Amendment right to due process arising out of

the circumstances of his termination. (Doc. 1 at 7.) The Due Process Clause of the Fourteenth

Amendment provides that a State shall not "deprive any person of life, liberty, or property,

without due process of law." U.S. Const. amend. XIV. In evaluating § 1983 due process claims,

courts undertake "a two-part inquiry to first determine whether plaintiff was deprived of a

protected interest, and, if so, what process was his due." *Rosu v. City of New York*, 742 F.3d 523,

526 (2d Cir. 2014) (citation omitted). In New York State, probationary employees have no

property rights in their position for due process purposes, and "may be lawfully discharged

without a hearing and without any stated specific reason." *Meyers v. City of New York*, 208 A.D.

2d 258, 262 (N.Y. App. Div. 1995). Tenured public employees are entitled to notice and the

opportunity to be heard prior to termination. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 319

(2d Cir. 2002).

Although the parties do not agree on whether Mr. Zdunski was a tenured or probationary

employee at the time of his termination (*see* Doc. 27-1 ¶ 24), the issue is irrelevant because Mr.

Zdunski received the pre-termination due process owed to tenured public employees, and so his

procedural due process claim fails regardless of his employment status. The uncontested facts in

the record establish that Mr. Zdunski received at least three written pre-termination notices from

Defendants explaining that any failure to attend the LGBTQ training would result in disciplinary

action, up to and including termination. (*See* Doc. 1 at 6; Doc. 26-11 at 4; Doc. 26-10; Doc. 26-3

¶ 19.) Mr. Zdunski attended two separate in-person meetings prior to his termination where he

was given the opportunity to be heard on the issues now at issue. (Doc. 1 at 6; Doc. 24.) The

facts in evidence more than satisfy the process to which Mr. Zdunski was due pursuant to the

14th Amendment. Accordingly, Plaintiff's procedural due process claim is dismissed.

**V.   Section 1985 Conspiracy to Interfere with Civil Rights and § 1986 Neglect in Preventing Interference with Civil Rights Claims (Counts 3 and 4)**

To prevail on § 1985 and § 1986 claims, a plaintiff must show: (1) a conspiracy; (2) for

the purpose of depriving, either directly or indirectly, any person or class of persons of equal

protection of the laws, or of equal privileges and immunities under the laws; (3) an act in

furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or

deprived of any right of a citizen of the United States. *United Bhd. of Carpenters & Joiners of*

*Am. Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983). In addition, the plaintiff must

show that some "class-based, invidious discriminatory animus" motivated the conspiracy. *Id.* at

829. To prevail upon a § 1986 claim, a plaintiff must also allege facts illustrating neglect by

individuals in preventing the conspiratorial acts set forth in § 1985. "Liability under § 1986 is

derivative of § 1985 liability, *i.e.*, there can be no violation of § 1986 without a violation of §

1985." *Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of N.Y., Inc.*, 968 F.2d 286, 292 (2d

Cir. 1992).

As discussed *supra*, Defendants did not deprive Plaintiff of any civil rights when they

terminated his employment. Plaintiff has failed to identify any further facts suggesting the

existence of a conspiracy. Plaintiff's conclusory accusations of conspiracy do not provide

SPA-27

sufficient basis from which a reasonable inference in his favor may be drawn. *See Hayes*, 976 F.3d at 259. Accordingly, Plaintiff's § 1985 claim is dismissed. Plaintiff's failure to assert a colorable § 1985 claim bars the § 1986 neglect claim, which shall also be dismissed.

### Conclusion

For the foregoing reasons, the court GRANTS Defendants' Motion for Summary Judgment (Doc. 26) in its entirety. All counts are dismissed with prejudice.

Dated this 16 day of February, 2022.

Geoffrey W. Crawford, Judge
United States District Court

SPA-28

Judgment in a Civil Case

United States District Court
_____WESTERN DISTRICT OF NEW YORK_____

RAYMOND ZDUNSKI,                                          **JUDGMENT IN A CIVIL CASE**
                                                         CASE NUMBER: 19-CV-940-GWC
                        Plaintiff,

        v.

ERIE 2-CHAUTAUQUA-CATTARAUGUS BOCES,
DAVID O'ROURKE, in his official capacity,
JOHN O'CONNOR, in his official capacity,
BRIAN LIEBENOW, LAURIE BURGER,
TRACY SMITH-DENGLER,

                        Defendants.


☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED: that the Defendants' motion for summary judgment is granted in its entirety. All counts are dismissed with prejudice.


Date: February 16, 2022                          MARY C. LOEWENGUTH
                                                 CLERK OF COURT

                                                 By: s/K.McMillan
                                                     Deputy Clerk